**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

BRANDON RAKOVSKY, individually and on behalf of a class of others similarly situated,

    Plaintiff,

v.

FITNESS TIME, L.L.C.,

    Defendant.
_____/

**CASE NO.: 1:19cv20282**

**CLASS ACTION**

**Jury Trial Demanded**

**CLASS ACTION COMPLAINT**

1.    Aimed at protecting consumer privacy, the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") prohibits, except in limited circumstances, the use of "automatic telephone dialing systems" to call cellular telephones. Specifically, the TCPA prohibits "any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A). The TCPA also bans unsolicited telephone marketing calls, including text messages, to members on the national Do-Not-Call list, regardless whether those calls are made using an automatic telephone dialing system or manually dialed.

2.    Defendant is in the health and fitness industry and operates gym(s) in Florida.

3.    In efforts to increase profits at the expense of consumers' rights, Defendant would

often send marketing text messages to consumers in attempts to promote their service.

4. These messages were sent using mass-automated technology through a third-party company (believed to be Textmunication, Inc.) hired by Defendant to send marketing text messages on Defendant's behalf *en masse*.

5. In sum, Defendant knowingly and willfully violated the TCPA, causing injuries to Plaintiff and members of the putative class, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

6. Through this putative class action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct. Plaintiff also seeks statutory damages on behalf of himself and members of the class, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## JURISDICTION AND VENUE

7. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740 (2012).

8. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a nationwide class, which will result in at least one class member belonging to a different state than Defendants. Plaintiff seeks up to $1,500.00 in damages for each call (text message) in violation of the TCPA, which, when aggregated among a proposed class numbering in the thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

9. Venue is proper in the District because a substantial portion of the events complained of occurred here, i.e., Defendant sent its telemarketing text messages which were received in this judicial district.

## PARTIES

10. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Miami- Dade County, Florida.

11. Defendant is an Florida corporation with a principal office located at 3400 LAKESIDE DR. STE 510 MIRAMAR, FL 3302. Defendant directs, markets, and controls all of its retail locations located in the United States.

## FACTUAL ALLEGATIONS RELATING TO PLAINTIFF

12. Defendant is in the health and fitness industry and operates gym(s) in Florida

13. In efforts to increase profits at the expense of consumers' rights, Defendant would often send marketing text messages to consumers advertising their services without express written consent from such consumers allowing Plaintiff to legally send the text messages at issue.

14. Upon information and belief, preceding this lawsuit, Defendant has sent at least one thousand illegal text messages over the last four years to members of the proposed classes.

15. Defendant's text messages constitute telemarketing because they encourage the future purchase of Defendant's products/services by consumers.

16. Plaintiff received the subject text messages within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

17. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted by text for marketing purposes.

18. Plaintiff is the subscriber and sole user of the 305-972-1123 phone number which the subject text messages were sent to.

19. Some, if not all of the messages originated from the phone number or short-code "52236."

20. Below is a screenshot of one such text message received by Plaintiff:

> Fri, Dec 21, 10:22 AM
>
> Fitness Time
> New Year Promotion
> Start for just $10!
> No billing until 2019!
> No Contract
> LAST CHANCE TO SAVE
> 305-945-7570 Txt STOP to STOP

21. The use of a short-code and the impersonal and generic nature of Defendant's text messages demonstrates that Defendant utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14- cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v.*

*Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Robbins v. Coca-Cola Co.*, No. 13-CV-132- IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

22.     Specifically, upon information and belief, Defendant, through their direction, utilized a combination of hardware and software systems to send the text messages at issue in this case. The systems utilized by Defendant have the current capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

23.     Defendant's unsolicited text messages caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life. *See Patriotic Veterans, Inc. v. Zoeller*, No. 16-2059, 2017 WL 25482, at *2 (7th Cir. Jan. 3, 2017) ("Every call uses some of the phone owner's time and mental energy, both of which are precious."). Plaintiff received the subject text message while he was at work, causing him to stop his work activities to check his phone.

24.     As outlined above, upon information and belief, Defendant hired a third-party company to send the marketing text messages in question *via* the "52236" short code to Plaintiff and members of the proposed class. The text messages were placed with software and hardware considered to be an ATDS in sending the text messages in question.

25.     The impersonal nature of the text messages and the use of a short-code demonstrates that the text messages at issue were placed using an Automatic Telephone Dialing

System as defined by federal law.

26. At no time did Plaintiff provide Defendant with prior express written consent to be sent marketing/promotional text messages to her cellular device with the use of an ATDS.

### TEXT MESSAGES PROVIDE TELEMARKETERS WITH INSTANT COMMUNICATION TO CONSUMERS TO PROMOTE GOODS AND SERVICES

27. In recent years, marketers stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which to send bulk solicitations to consumers easily and cheaply.

28. One of the newest methods of bulk marketing is to advertise through text messages sent to mobile phones.

29. Unlike faxes and unanswered phone calls, a text message allows virtually instantaneous communication with the recipient, almost anywhere in the world, day or night. Many cell phones immediately alert the recipient of new text messages. Consumers frequently use text messaging to stay in close contact with business colleagues and associates, family members, and friends. Text messaging is also used by schools, police departments, fire departments, and emergency medical services across the country.

30. The instantaneous nature of text message communication makes it very appealing to telemarketers—and very annoying to consumers subjected to spam text messages.

31. And unlike other forms of advertisement, spam texts can cost its recipients money.

32. Spam text messages are a burgeoning phenomenon. One authority estimates that Americans received more than four billion spam texts in 2011 more than double the number sent just two years earlier.

### OVERVIEW OF THE TCPA

33. In 1991, Congress enacted the TCPA to regulate the explosive growth of the

telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy . . . ." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227). Specifically, in enacting the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("Robocalls"), finding:

> Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
>
> . . . .
>
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call . . . , is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Id. § 2(10) and (12); *See also Mims v. Arrow Financial Services, Inc.*, 132 S.Ct. 740 (Jan. 18, 2012).

34. While imposing general restrictions on a wide set of telemarketing practices, the TCPA's strictest provisions apply to telemarketing by automatic telephone dialing system. *See* 47 U.S.C. § 227(b)(1).

35. The statutory definition of an automatic telephone dialing system (sometimes called "autodialer") is "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator to dial the numbers[,]" and has the capacity to dial such numbers. Id. § 227(a)(1). The term also extends to predictive dialers and equipment that has the capacity to dial numbers without human intervention. *See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014, 14093 (2003).

36. With the limited exception of calls made for emergency purposes, the TCPA bans all calls to cell phones placed through an autodialer, regardless of whether they solicit the sale of

goods or services, unless the recipient of the call provides "prior express consent" to receive the calls. 47 U.S.C. § 227(b); 47 C.F.R. § 64.1200(a)(1).

37. "Prior express consent" exists where a consumer has (a) clearly stated that the telemarketer may call, and (b) clearly expressed an understanding that the telemarketer's subsequent call will be made for the purpose of encouraging the purchase of goods or services. *See In The Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 F.C.C.R. 12391, 12396, para. 11 (1995).

38. Under FCC regulations, telemarketing calls require prior express **written** consent. 47 C.F.R. § 64.1200(a)(2).

39. "Prior express written consent" means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(8).

40. A text message is a call within the meaning of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir.2009).

**Vicarious Liability**

41. Under the TCPA, as interpreted by the FCC, a person or entity can be liable for calls made on its behalf even if that person or entity did not directly dial those calls.

42. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In the Matter of*

Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 10 F.C.C Rcd. 12391, 12397 (1995).

43. In 2008, the FCC reiterated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 565 (2008) (specifically recognizing "on behalf of" liability in the context of a robocall sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)).

44. In May of 2013, the FCC reinforced this issue. *See In the Matter of the Joint Petition Filed by Dish Network*, LLC, 28 F.C.C. Rcd. 6574 (2013) (hereinafter "2013 FCC Ruling Order") (clarifying that "a seller … may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services."). The FCC rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*. n.107.

45. The 2013 FCC Order further explained:

> "To provide guidance in this area, we find that the following are illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations. For example, apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller

failed to take effective steps within its power to force the telemarketer to cease that conduct. At a minimum, evidence of these kinds of relationships – which consumers may acquire through discovery, if they are not independently privy to such information – should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent.

"[ ] In sum, under our current rules and administrative precedent interpreting and implementing sections 227(b) and 227(c), we do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under section either section 227(c) or section 227(b). **However, we see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services.** In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised. In the case of either actions to enforce section 227(b) or actions to enforce do-not-call restrictions under section 227(c), we stress that nothing in this order requires a consumer to provide proof – at the time it files its complaint – that the seller should be held vicariously liable for the offending call. (emphasis added)

Id. at ¶¶ 46-47).

46. Accordingly, it is undeniably clear, that an entity can be liable under the TCPA for a call made on its behalf even if the entity did not directly place the call under a number of theories, including vicarious liability. Under those circumstances, the entity is properly deemed to have initiated the call through the person or entity that actually placed the calls.

## CLASS ALLEGATIONS

47. Plaintiff brings this action on behalf of two (2) nationwide classes of similarly situated individuals, the first of which consists of:

> **The No Consent to Text Class: All persons in the United States to whom, within the four years immediately preceding the filing of this Complaint, Defendant or some person acting on Defendant's behalf sent one or more text messages to their cellular telephone advertising Defendant's goods and/or services, through the use of the same or materially similar telephone dialing equipment as that which was used to send the texts at issue to the Plaintiff.**

48. Plaintiff is a member of the No Consent to Text Class.

49. The second class consists of:

> **The DNC Class: All persons in the United States to whom, within the four years immediately preceding the filing of this Complaint, Defendant or some person acting on Defendant's behalf sent one or more text messages to their cellular telephone advertising Defendant's goods and/or services, while the subject cellular telephone number was registered on the National Do-Not-Call list for more than 31 days.**

50. Plaintiff is a member of the DNC Class.

51. Defendant and their employees or agents, Plaintiff's attorneys and their employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress are excluded from the Classes.

52. The Classes are so numerous and geographically widespread that joinder is impracticable. Upon information and belief, as well as common experience of the size of automated dialing campaigns, there are easily more than one thousand persons in each Class.

53. Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting any individual member of the Classes, including Plaintiff. Such questions common to the Classes include, but are not limited to:

a. Whether the text messages that are the subject of this lawsuit were sent using an "automatic telephone dialing system" as proscribed by the TCPA and applicable FCC regulations and orders;

b. Whether the text messages that are the subject of this lawsuit were sent to individuals whose cellular telephone was registered on the national do not call registry.

    c.    Whether the violation was negligent or willful.

54.    Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has no interests that might conflict with the interests of the Class. Plaintiff is interested in pursuing his claims vigorously and has retained counsel competent and experienced in class and complex litigation.

55.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

56.    No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

57.    Defendant have acted on grounds generally applicable to the Classes, thereby making relief appropriate with respect to the Classes as a whole.

58.    Prosecution of separate actions by individual members of the Classes, should they realize their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual members of the Classes that would establish incompatible standards of conduct.

59.    The identity of the Class Members is likely readily identifiable from Defendant's records, or the records of other person(s) involved with sending the text messages.

60.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

## COUNT I
### Violation of 47 U.S.C. § 227(b) and the Regulations Promulgated Thereunder
**(On Behalf of Plaintiff and the No Consent to Text Class)**

61. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

62. It is a violation of the TCPA, 47 U.S.C. §227(b) to call a person's cellular telephone using an automatic telephone dialing system. The TCPA also specifically prohibits the use of an unsolicited text messages to advertise the sale of goods and services. 47 U.S.C. § 227(b)(1)(B); 47 C.F.R. § 64.1200.

63. Defendant, or some person on their behalf, sent one or more text messages to plaintiff and others' cellular telephones, using an automatic telephone dialing system without Plaintiff's or the class members' prior express written consent.

64. The Defendant's text messages were negligently placed, or alternatively, willfully placed despite prior knowledge of the TCPA.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of herself and the class and against Defendant that provides the following relief:

a. Statutory damages of $500 per violation, and up to $1,500 per violation if proven to be willful;

b. A permanent injunction prohibiting Defendant from violating the TCPA in the future through calling cell phones using an automatic telephone dialing system and/or a prerecorded voice message;

c. A declaration that Defendant used an automatic telephone dialing system and artificial or prerecorded voice, and violated the TCPA in using such for calls to the cell phones of plaintiff and the class; and

d. Any other relief the Court finds just and proper.

## COUNT II
### Violation of 47 U.S.C. § 227(c) and the Regulations Promulgated Thereunder
**(On Behalf of Plaintiff and the DNC Class)**

65. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

66. It is a violation of the TCPA, 47 U.S.C. §227(c) to call a person who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200.

67. Defendant, or some person on its behalf, sent one or more marketing text messages to Plaintiff and others' cellular telephone numbers when said numbers had been registered on the national do-not-call registry for more than 31 days.

68. Such text messages were sent without Plaintiff's or the class members' express written consent.

69. The Defendant's text messages were negligently placed, or alternatively, willfully placed despite prior knowledge of the TCPA.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of herself and the class and against Defendant that provides the following relief:

a. Statutory damages of $500 per violation, and up to $1,500 per violation if proven to be willful;

b. A permanent injunction prohibiting Defendant from violating the TCPA in the future through calling cell phones registered with the national do-not-call registry;

c. A declaration that Defendant made calls to numbers registered with the national do-not-call registry, and violated the TCPA in making such calls to the cell phones of Plaintiff and the class; and

d. Any other relief the Court finds just and proper.

## JURY DEMAND

70. Plaintiff demands trial by jury.

Dated:  January 18, 2019

                                          Respectfully submitted,

                                          By: /s/ Jibrael S. Hindi
                                          Jibrael S. Hindi, Esq.
                                          THE LAW OFFICE OF JIBRAEL S. HINDI, PLLC
                                          110 SE 6th Street
                                          Ft. Lauderdale, FL 33301
                                          Tel: (954) 907-1136
                                          Fax: (855) 529-9540
                                          jibrael@jibraellaw.com